UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
-------------------------------------------------------------------X
CRACKED ENTERTAINMENT, INC.,                   :
                                               :   Case No.:
                          Plaintiff,           :
                                               :
            vs.                                :   **COMPLAINT**
                                               :
CHAD NEVOLA, TOM GONNELLA,                     :   CA 06    44
MARK WILLIAMS and JOHN SOUZA,                  :
                                               :
                          Defendants.          :
                                               :
                                               :
-------------------------------------------------------------------X
```

  Plaintiff, Cracked Entertainment, Inc. ("CEI"), for its Complaint against defendants Chad

Nevola, Tom Gonnella, Mark Williams and John Souza ("Defendants") by its counsel Thelen

Reid & Priest LLP, alleges upon information and belief as to facts concerning others and upon

personal knowledge as to facts concerning CEI, as follows:

<u>**NATURE OF THE ACTION**</u>

  1. This action arises from Defendants' attempt to enter and establish themselves in

the entertainment field by willfully trading off of the fame, reputation and goodwill of CEI's

CRACKED trademark, which CEI has established through enormous effort and financial

investment associated with its almost fifty years of national publication of *Cracked* magazine.

Originally conceived as a competitor to *Mad* magazine, *Cracked* magazine was first published in

March 1958, and has been continuously published throughout the United States since that time.

Over the course of this forty-eight year period, the CRACKED mark has become engrained in

American popular culture as a symbol of a particular brand of humor and parody, to the point

where the mark has been frequently referenced in various other popular culture media, such as the television shows *Seinfeld*, *The Simpsons* and *Family Guy* and the *Howard Stern* radio show. CEI's use of the CRACKED mark, including through its predecessors in interest, has been exclusive and unchallenged in its almost fifty-year history.

2.      Notwithstanding these facts, and likely because of these facts, Defendants have chosen to trade upon the enormous goodwill associated with CEI's CRACKED trademark by adopting the name CRACKED for his musical group, marketing and advertising the services and sound recordings of that group under the CRACKED mark and attempting to register the CRACKED mark with the United States Patent and Trademark Office. Defendant's use of an identical mark for entertainment goods and services is likely to cause confusion, mistake and deception among consumers as to the source, sponsorship or affiliation of Defendants' goods and services.  In particular, Defendants' unauthorized use of CRACKED is leading the public to mistakenly believe that CEI is in some way associated with, or otherwise sponsors or endorses, Defendants' musical group and sound recordings. Defendants' use of CRACKED also serves to dilute the distinctiveness of CEI's CRACKED mark and the substantial goodwill CEI has built up in the mark at significant expense and effort.

3.      Despite communications from CEI informing Defendant Nevola of CEI's long prior and superior rights to the CRACKED mark, Defendants have persisted in its trading off of the goodwill associated with that mark. With each day that Defendants' unauthorized use persists, CEI's mark is further diluted and the goodwill associated with the mark is irreparably damaged. CEI is therefore left with no alternative but to bring this action for trademark infringement, unfair competition, dilution, and related claims under federal and Rhode Island

statutory and common law, seeking injunctive relief to prevent Defendants' continued fostering

of a false identification and association between Defendants and CEI, and further  co-opting the

goodwill and reputation of CEI's famous and valuable trademark rights.

## PARTIES

4.      Plaintiff CEI is a corporation duly organized and existing under the laws of the

State of Delaware, with its principal place of business at 381 Park Avenue South, Suite 1200,

New York, New York 10016.

5.      Defendant Nevola is an individual residing and/or having a principal place of

business in this District at 120 Dudley Street, Suite 105, Providence, Rhode Island 02905.

6.      Defendant Gonnella is an individual residing and/or having a principal place of

business in this District.

7.      Defendant Williams is an individual residing and/or having a principal place of

business in this District.

8.      Defendant Souza is an individual residing and/or having a principal place of

business in this District.

## JURISDICTION AND VENUE

9.      CEI brings this action for federal trademark infringement and unfair competition

in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); federal trademark dilution

in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); trademark dilution in

violation of Section 6-2-12 of the Rhode Island General Laws; and trademark infringement in

violation of the common law of the State of Rhode Island.

10.     This Court has original jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28

U.S.C. §§ 1331, 1338(a) and 1338(b).  This Court has supplemental jurisdiction over all other

claims asserted herein under 28 U.S.C. § 1367(a).

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b), in that

Defendants reside and otherwise conduct business in this District, and a substantial part of the

events giving rise to the claims occurred in this District.

## THE BUSINESS OF CRACKED ENTERTAINMENT INC.

12.     Cracked was first published in March of 1958 by Major Publications and has been

published continuously for the past 48 years. Originally conceived as a competitor to *Mad*

magazine, it is the only of several such competitors to have survived against the highly popular

*Mad*, which has been published since 1952. A true and correct copy of the cover of the first issue

of *Cracked* magazine is attached hereto as Exhibit 1.

13.     Each issue of *Cracked* magazine consists of approximately 50 pages of original

material (in both color and black & white) and a color cover. The hallmark of *Cracked* magazine

has always been its satires, parodies and humorous treatment of popular culture. Throughout its

history, *Cracked* has covered everything from television shows, movies and video games to

musicians, sports, politics, news and current events.  The pages of *Cracked* have featured every

U.S. president from Eisenhower all the way through to George W. Bush.

14.     The success, longevity and survival of *Cracked* magazine can be attributed to a

number of factors, including its status as a magazine and not as a comic book, which allowed it

to enjoy wide national distribution at newsstands, as well as its hiring some of the most talented

artists and writers in the humor genre throughout its almost fifty-year history (including by even

raiding *Mad*'s talent pool of artists on occasion). Some of the notable artists who have appeared in *Cracked* include John Severin, who had done some early work for *Mad* but would later become *Cracked*'s most famous artist; Bill Ward; gag cartoonist Charles Rodrigues; former and future *Mad* artists such as Jack Davis, Will Elder, Al Jaffee, Don Martin, Angelo Torres, Basil Wolverton, Bill Wray, Tom Richmond and Marvel regulars Steve Ditko and Gene Colan; and more recently, the successful and highly touted graphic novelist Dan Clowes.

15.     *Cracked* has remained in continuous publication to the current day. True and correct copies of representative samples of various *Cracked* magazine covers, spanning from the 1950's through the present, are attached hereto as Exhibit 2.

16.     Although popular from its inception in the 1950s, *Cracked* magazine's circulation peaked in the 1970s, approaching 1,000,000 copies in some months. Through the 1980s and 1990s, Cracked continued to enjoy great success, with circulation numbers between 100,000 – 500,000 each month. By the year 2000, circulation was averaging 300,000 copies per month. During the storied O.J. Simpson case, an especially funny *Cracked* cover featuring Simpson was featured all over U.S. media, including *TIME* magazine. *Cracked* magazine's staff members have been frequent guests on *The Howard Stern Show* and *Entertainment Tonight*. Television networks, film studios, producers and novelists (including Stephen King) have been known to send advance copies of their shows, scripts, promotional materials and novels to *Cracked*, hoping that a parody by the magazine (and what was termed the "CRACKED treatment") would boost their publicity efforts.

17.     Starting in the 1980's, ownership of *Cracked* Magazine changed hands several times. In late 1999, the then-publisher of *Cracked*, Globe Communications, sold the majority of

its titles to American Media, Inc., the publishers of various national tabloids, including *The National Enquirer* and *Weekly World News*, as part of a package deal of several of Globe's various publications. The titles sold by Globe included the national tabloid *The Globe* and *Cracked*. Immediately following the acquisition, American Media moved the *Cracked* offices, for the first time, from New York to Florida. In late 2000, American Media sold the *Cracked* magazine business to one of its employees, Dick Kulpa, who became publisher and editor-in-chief. In September 2001, *Cracked* magazine was at the center of the post-9/11 anthrax scare: an anonymous letter was sent to American Media containing anthrax powder, killing one employee. The *Cracked* offices were still located in the same building, and almost all of the magazine's business records and vast film archives were lost or destroyed in the resulting decontamination process.

18.     Mr. Kulpa soon realized that he did not have sufficient financing to properly maintain *Cracked* magazine at its full potential. Although he continued to publish the magazine throughout this time, Mr. Kulpa decided to sell the business. In January 2005, CEI purchased *Cracked* magazine from Mr. Kulpa. The acquisition soon received widespread press coverage, as CEI announced its aggressive plans to revive and re-launch *Cracked* magazine as well as to expand the CRACKED brand into various other comedy-related fields including movies, television, music, radio, DVDs, CDs, toys and video games, as alternative delivery media for CRACKED humor and entertainment.

19.     For some time prior to the CEI acquisition, *Cracked* magazine had targeted radio as an area of expansion for CRACKED humor and entertainment content, entering into discussions with broadcasters such as Envision Radio Networks and XM Radio. After the

acquisition, CEI has continued to receive overtures and engage in discussions with potential radio partners.

20.     Also prior to the CEI acquisition, *Cracked* magazine had historically pursued the expansion of its CRACKED mark into humor-based motion picture and television programs and merchandising, including clothing, toys and games. In January 2004, CRACKED entered into an option agreement for such expansion with DPS Film Roman, the leading independent animation company known for such hit shows as *The Simpsons* and *King of the Hill* as well many Saturday morning and syndicated kids animation including the top-rated series *X-Men: Evolution*. Attached hereto as Exhibit 3 is a true and correct copy of a news article discussing the agreement. Since CEI's acquisition of CRACKED in January, CEI has continued high-level discussions with parties in Hollywood and has named Thom Mount, the former head of Universal Pictures, to CEI's Board of Directors.  CEI has also been in discussions with several Hollywood agencies regarding representation as well as successful independent producers.

21.     There is ample precedent for magazine brands expanding into other entertainment media. For example, Sirius Satellite features a MAXIM channel, licensed from and controlled by the popular *Maxim* magazine.  Such expansion is particularly common in the comedy marketplace. *The National Lampoon* magazine expanded into a radio show called *The National Lampoon Radio Hour*, as well as feature motion pictures such as *National Lampoon's Animal House* and the successful series of *National Lampoon's Vacation* films.  National Lampoon also released many record albums and CDs under their brand.  *Mad* magazine expanded into television with *Mad TV*, and feature films with *MAD Magazine's Up the Academy*.

22.     *Cracked* magazine continues to enjoy wide national distribution through Curtis

Circulation, the largest national distributor of magazines.  In addition to *Cracked*, Curtis' clients

include *Maxim*, *Newsweek*, *Elle*,  *Forbes* and *Car and Driver*. Curtis' share of the single copy

marketplace for North American publications is 43% and the company has retail sales exceeding

$2 billion per year. After nearly fifty years of continuous publication, *Cracked* magazine is the

only surviving original competitor of *Mad* magazine.

## THE FAMOUS CRACKED TRADEMARK

23.     As noted above, the CRACKED mark was first used in interstate commerce in

March 1958, in connection with humor magazines.  *Cracked* magazine has been continuously

published since that date.  Although there has been a short and temporary hiatus during the

transition period since CEI acquired the magazine, CRACKED has published new content

weekly on its Internet website and has published a promotional issue of CEI's revamped *Cracked*

magazine, which has been distributed to potential advertisers.  The first official new issue of the

magazine is scheduled to be published and distributed through newsstands nationwide in April

2006.

24.     The CRACKED mark has also been used in connection with a website since at

least as early as 1998 at www.cracked.com and www.crackedmag.com . The CRACKED

website has featured a wide variety of multimedia entertainment content in connection with the

CRACKED mark, featuring original humor pieces, comics, interviews and video and audio

recordings (including musical parodies).

25.     Through the continuous use of the CRACKED mark by CEI (including through

its predecessors in interest), the CRACKED mark has been well-established and has developed

8

tremendous recognition and goodwill in the minds of consumers as a brand signifying a single source of the highest-quality entertainment-related goods and services. The CRACKED mark has particularly come to be associated with an edgy, irreverent and sometimes controversial style of humor and entertainment.

26.     CEI's exclusive use of the CRACKED mark for almost fifty years has been uncontested. By virtue of the long history of CEI's and its predecessors' business operations and the widespread distribution, advertising and promotion throughout the United States, and internationally, of *Cracked* magazine, the CRACKED mark has become highly distinctive and famous throughout the United States, as also evidenced by ubiquitous references to CRACKED in various articles, television and radio shows. The CRACKED mark is universally recognized and relied upon by consumers as identifying CEI as the sole source of CRACKED humor and entertainment content, and as distinguishing such content from the goods and services of others. Such use and the resulting secondary meaning imbued in the CRACKED mark have engendered common law rights to the mark in CEI.

27.     Having become an icon of popular culture, *Cracked* magazine is frequently referenced in newspapers, websites and other popular culture media. Indeed, the history of popular culture references to *Cracked* magazine reaches back to at least 1963, when television celebrity Steve Allen displayed a copy of *Cracked*  magazine featuring a parody of him on the *The Steve Allen Show*. In the 1980s, *Cracked* magazine was featured on Joan Rivers' *Late Show* when Pee-Wee Herman displayed an issue of *Cracked* magazine featuring a Pee-Wee Herman parody. And on NBC's *Late Night with David Letterman*, host David Letterman referenced a *Cracked* parody of himself in one of his sketches and displayed the issue. True and correct

9

copies of pictures showing the appearance of *Cracked* on these various shows are attached hereto as Exhibit 4.

28.     More recently, *Cracked* magazine was featured in Season 6, Episode 5 (Series Episode 91) entitled "The Couch", of the hit NBC TV series *Seinfeld*. The episode originally aired on October 27, 1994. *Seinfeld* is currently being shown in syndication nationally on both cable and broadcast outlets, as well as throughout the world, and is currently being released on DVD, where it is enjoying extremely strong sales.  The *Seinfeld Episode Guide* located at http://www.stanthecaddy.com/the-couch-script.html contains a script and description of the entire episode, including this description of George Costanza's reading habits:

> Cut back to George at home. His television program finishes, and he turns off the TV. He stretches, then goes back to reading - not "Breakfast At Tiffany's" however, but an issue of *Cracked* magazine.

29.     *The Simpsons* is one of television's longest-running and highest rated shows today.  New episodes air on the FOX Television network and repeats appear in syndication Nationally and all over the world. As evidence of its iconic status in the popular culture, *Cracked* magazine been referenced numerous times on *The Simpsons*. For example, *Cracked* magazine was referenced in the episode "Separate Vocations," which originally aired on Thursday February 27, 1992. In that episode, Principal Skinner describes the items that he has confiscated from students: "Salacious halter tops, complete collections of *Mad*, *Cracked*, and even the occasional issue of *Crazy*. And this fake plastic derriere."  *Cracked* was also referenced in the episode "Team Homer," which originally aired on Sunday, January 6, 1996.  That episode features a scene in a comic book store, where *Cracked* magazine is featured prominently on a shelf. A true and correct copy of a still frame of the episode, prominently showing the reference

10

to *Cracked* magazine (including CRACKED's iconic mascot on the cover), is attached hereto as
Exhibit 5.

30.     *Cracked* magazine is frequently referenced on *The Howard Stern Show*. On one
program, originally airing on February 13, 2001 at 6:50 am, representatives from *Cracked*
magazine, including "Miss CRACKED," appeared on the show and promoted the magazine. As
recently as August 4, 2005, Howard Stern had a former *Cracked* magazine employee appear on
the show.  Howard repeatedly mentioned *Cracked* magazine during the segment.

31.     *Stargate SG-1* is a TV series based on the 1994 science fiction film *Stargate*.  The
show premiered on Showtime on July 27, 1997.  It is currently in its ninth season on the SciFi
Channel.  In the episode entitled "Fragile Balance" (production number 703), which originally
aired on June 20, 2003, one of the characters on the show is shown sleeping with an open
*Cracked* magazine laying across his chest. See the excerpt below from an episode guide which
may be viewed at the website http://rdanderson.com/stargate/database/databas7.htm :

> - O'Neill's security ID indicates his full name is John J. O'Neill,
> birthdate October 20, 1952.
>
> - O'Neill has not mentioned having a sibling.
>
> - O'Neill reads "Cracked" magazine.

32.     In 2003, *Cracked* magazine was also referenced on the television shows
"Grounded For Life" and "The Chris Isaak Show."

33.     This past year, *Cracked* magazine was featured in a new episode of FOX
Television Network's wildly popular animated series *Family Guy*.  In episode 53 (entitled
"Blind Ambition"), which aired on May 15, 2005, Peter is depicted reading an issue of *Cracked*
magazine to Meg and comments amusedly on how a parody of the TV show *Happy Days* was

entitled "Crappy Days." A true and correct copy of a still frame of the episode, showing the reference to *Cracked* magazine, is attached hereto as Exhibit 6.

34.      Celebrities and other notable public figures are routinely photographed reading *Cracked* magazine. Examples include Steven Tyler of the band Aerosmith, Rick Nielson of the band Cheap Trick, talk show host Maury Povich, *Apprentice* season one winner Bill Rancic, *Apprentice* star Carolyn Kepcher (blonde woman who helps to judge *Apprentice* candidates), former Minnesota Governor (and professional wrestler) Jesse Ventura, *Saturday Night Live* cast member Kevin Nealon, former Chicago Bears quarterback Jim McMahon, Stanley Cup winner Brett Hull, retired San Francisco Giants and Arizona Diamondbacks baseball player Matt Williams, actor Lorenzo Lamas (of *Falcon Crest*, *Renegade* and *Bold and the Beautiful* fame), actress Virgina Hay from *Mad Max 2*, actress Erin Gray (of *Buck Rogers* and *Silver Spoons* fame), singer/actor Chris Isaak, former Oakland A's pitcher Barry Zito, TV and film actor and co-host of *The Howard Stern Show* Artie Lange, and actor Jamie Farr of *M\*A\*S\*H* fame. True and correct copies of photographs featuring these celebrities reading *Cracked* magazine are attached hereto as Exhibit 7.

35.      Two of CEI's predecessors in interest obtained trademark registrations for the CRACKED mark. The first registration, No. 1,009,915, was filed by the original publisher of *Cracked* magazine, Major Magazines, on December 10, 1973, for the CRACKED mark in connection with humor magazines. This registration was renewed in 1984, achieving incontestability status, and remained in force and effect until February 12, 1996, when the necessary renewals were not filed. Notably, the magazine was no longer owned by Major Magazines at that point. A true and correct copy of the trademark prosecution history for this

registration, from the on-line database provided by the United States Patent and Trademark Office, is attached hereto as Exhibit 8.

36.     A second registration, No. 2,015,215, was filed on September 13, 1995, the year before the first registration lapsed, by the then-current publisher, Globe Communications Corp. This registration lapsed on August 18, 2003, when the required renewal papers were not timely filed. Notably, at this time the magazine was no longer owned by Globe Communications Corp., but had been sold twice and was owned by Mr. Kulpa. Moreover, the business records of *Cracked* magazine had by that time perished in the September 2001 anthrax attack, making it likely that Mr. Kulpa had no records of the trademark registration or the necessity of filing the renewal papers. A true and correct copy of the trademark prosecution history for this registration, from the on-line database provided by the United States Patent and Trademark Office, is attached hereto as Exhibit 9.

37.     Thus, although the CRACKED mark was continuously registered by CEI's predecessors in interest from December 10, 1973 through August 18, 2003, those registrations inadvertently lapsed. CEI has since filed Application Serial No. 78/689,016 to re-register the CRACKED mark for use in connection with magazines featuring humor, parody and entertainment.

38.     CEI has also filed the following pending applications: Serial No. 78/692,590 for radio programs; Serial No. 78/693,017 for books, posters and calendars; Serial No. 78/693,020 for wearing apparel; Serial No. 78/693,021 for toys and games; Serial No. 78/693,023 for sound and video recordings featuring humor, parody and entertainment; audio and video tapes, DVDs, audio cassettes, compact discs and grooved phonograph records, pre-recorded magnetic data

carriers, downloadable ring tones and graphics for mobile phones, motion picture films, and computer and video game programs; and Serial No. 78/693,032 for a website featuring multimedia content and television programs.

39.    In the entire forty-eight years that CEI (including through its predecessors) used the CRACKED mark, no third party has ever registered CRACKED for use in connection with any goods or services.

## UNLAWFUL CONDUCT BY DEFENDANT

40.    On or about August 24, 2004, Defendant Nevola filed an application, Serial No. 78/472,342, with the United States Patent and Trademark Office to register the mark CRACKED for use in connection with musical recordings and entertainment services, namely live performances by a musical group (the "Nevola Application"). This application was filed based upon Nevola's intent to use the mark as the name of a musical group consisting of himself and the other Defendants.

41.    CEI first learned of Nevola's trademark application in or about July, 2005. Counsel for CEI promptly sent a letter to Nevola on July 22, 2005, informing him of CEI's rights in the CRACKED mark and requesting that Nevola abandon his application and cease any plans to use the CRACKED mark in commerce. A true and correct copy of that letter is attached hereto as Exhibit 10.

42.    Nevola's counsel responded to CEI's objections on August 2, 2005, stating that Nevola refused to abandon his application, notwithstanding CEI's longtime use of the mark. A true and correct copy of that letter is attached hereto as Exhibit 11. The Nevola Application

subsequently was published for opposition on September 13, 2005. CEI obtained an extension of time to file an opposition and the parties briefly discussed settlement.

43.   In or about November 2005, despite CEI's objections and with full knowledge of CEI's longtime use of and superior rights in the CRACKED mark, Defendants began using the CRACKED mark as the name of their band in connection with live performances and began offering CDs for sale under the CRACKED mark.

44.   On January 11, 2006, CEI filed a notice of opposition to the Nevola Application with the United States Patent and Trademark Office.

45.   Defendants' use of the designation CRACKED in connection with their entertainment goods and services is likely to cause confusion or mistake or deceive consumers into thinking that Defendants' performances and sound recordings are sponsored, authorized or endorsed by, or affiliated, connected or otherwise associated with CEI or CEI's *Cracked* magazine. Defendants intentionally, willfully and in bad faith created this misimpression.

46.   Defendants' activities are likely to, and in fact are, diminishing, blurring and/or tarnishing the goodwill associated with the CRACKED mark, thereby diluting the distinctive quality of CEI's mark.

47.   Defendants' activities have caused and will continue to cause CEI great and irreparable harm. Unless restrained and enjoined by this Court, Defendants will persist in their unlawful activities, thereby causing further damage and irreparable harm to CEI and to the public interest.

48.   Due to this irreparable harm, CEI has no adequate remedy at law.

## Count I: Federal Trademark Infringement and Unfair Competition

49.     CEI hereby realleges and incorporates herein the allegations set forth in paragraphs 1-48 of this Complaint.

50.     The aforesaid acts of Defendants constitute use in commerce of words, terms, names, symbols and devices, and combinations thereof; false designation of origin; false and misleading descriptions of fact; and false and misleading descriptions of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Plaintiff, or as to the origin, sponsorship or approval of Defendants' services, goods or other commercial activities by CEI.

51.     The aforesaid acts of Defendants constitute use in commerce of words, terms, names, symbols and devices, and combinations thereof; false designation of origin; false and misleading descriptions of fact; and false and misleading descriptions of fact in commercial advertising or promotion that misrepresents the nature, characteristics or qualities of Defendants' services, goods or other commercial activities.

52.     The aforesaid acts of Defendants constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

53.     The aforesaid acts of Defendants were willfully intended to trade on the reputation and the goodwill associated with CEI's CRACKED mark.

54.     The aforesaid acts of Defendants have caused, and are continuing to cause, great and irreparable harm to CEI.  Unless permanently restrained by this Court, this irreparable injury will continue.

## Count II: Federal Trademark Dilution

55.    CEI hereby realleges and incorporates herein the allegations set forth in paragraphs 1-54 of this Complaint.

56.    The aforesaid acts of Defendants constitute commercial use beginning after the CRACKED mark had become famous and are diluting the distinctive quality of the CRACKED mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

57.    The aforesaid acts of Defendants were willfully intended to trade on CEI's reputation and to dilute the famous CRACKED mark.

58.    The aforesaid acts of Defendants have caused, and are continuing to cause, great and irreparable harm to CEI.  Unless permanently restrained by this Court, this irreparable injury will continue.

## Count III: Dilution Under Rhode Island Law

59.    CEI hereby realleges and incorporates herein the allegations set forth in paragraphs 1-58 of this Complaint.

60.    The aforesaid acts of Defendants constitute commercial use beginning after the CRACKED mark had become famous and are diluting, or are likely to dilute, the distinctive quality of the CRACKED mark.

61.    The aforesaid acts of Defendants are likely to injure the business reputation of CEI and to dilute the distinctive quality of the CRACKED mark, in violation of Section 6-2-12 of the Rhode Island General Laws.

62.    The aforesaid acts of Defendant have caused, and are continuing to cause, great and irreparable harm to CEI.  Unless permanently restrained by this Court, this irreparable injury will continue.

## Count VI: Common Law Trademark Infringement

63.    CEI hereby realleges and incorporates herein the allegations set forth in paragraphs 1-62 of this Complaint.

64.    The aforesaid acts of Defendants constitute the use of a designation that is likely to cause confusion as to the source of Defendants' services.

65.    The aforesaid acts of Defendants constitute trademark infringement in violation of the common law of the State of Rhode Island as well as several states of the United States.

66.    The aforesaid acts of Defendants have caused, and are continuing to cause, great and irreparable harm to CEI.  Unless permanently restrained by this Court, this irreparable injury will continue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CEI requests judgment against Defendants as follows:

1.    That Defendants, their agents, servants, employees and attorneys, and those persons in active concert or participation with them be preliminarily and permanently enjoined and restrained from:

(a)    Using on or in connection with any entertainment services, including performances by a musical group, or any sound recordings, the designation "Cracked" or any colorable imitation thereof or any designation confusingly similar thereto;

(b)     Representing by any means whatsoever, directly or indirectly, or doing any other acts calculated or likely to cause confusion, mistake or to deceive consumers into believing that Defendants' services and any related goods are the services or products of Plaintiff, or that there is any affiliation or connection between Plaintiff or Plaintiff's services and goods and Defendants or Defendants' services and goods, and from otherwise unfairly competing with Plaintiff; and

(c)     Using any mark in a manner so as to cause the dilution of the distinctive quality of the famous CRACKED mark.

(d)     Seeking or continuing to seek registration of the CRACKED mark or any colorable imitation thereof or and mark confusingly similar thereto.

2.     That Defendants be directed to file with this Court and to serve upon Plaintiff within thirty (30) days after service upon Defendants of this Court's injunction issued in this action, a written report by Defendants, signed under oath, setting forth in detail the manner in which Defendants has complied with the injunction.

3.     That Defendant Nevola be directed to abandon and withdraw the Nevola Application from the United States Patent and Trademark Office with prejudice, if still pending.

4.     That the Court order the cancellation of any registration of the CRACKED mark by Defendants with the Patent and Trademark Office or any other registration authority.

5.     That Plaintiff recover its damages sustained as a result of Defendants' trademark infringement, unfair competition and dilution, together with an accounting of Defendants' profits arising from such activities, and that the Court exercise its discretion and enter a judgment for

such additional sums as the Court shall find to be just, according to the egregious nature of the acts of Defendant.

6.     That the Plaintiff recover treble damages under 15 U.S.C. § 1117 by reason of the willful and deliberate acts of federal trademark infringement and unfair competition by Defendant.

7.     That Plaintiff recover its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

8.     That Defendants be required to recall from any and all channels of trade any and all advertising or promotional materials or other infringing matter, and to take affirmative steps to dispel any false suggestion of a connection to Plaintiff by virtue of its infringing activities, including without limitation all necessary or appropriate corrective advertising measures.

9.     That Plaintiff recover its taxable costs and disbursements herein.

10.    That Plaintiff have such other and further relief as the Court may deem just and proper.

CRACKED ENTERTAINMENT, INC.

By Its Attorneys,

RICHARD W. MacADAMS ($1681)
MacADAMS & WIECK INCORPORATED
101 Dyer Street, Suite 400
Providence, RI  02903
(401) 454-8700
(401) 454-8755 (Fax)
Dated:  January 27, 2006

-and-

THELEN REID & PRIEST LLP
Paul M. Fakler (to be admitted *pro hac vice*)
875 Third Avenue
New York, New York 10014
Phone:  212.603.2000
Fax:  212.603.2001

Attorneys for Plaintiff